BAY VIEW ESTATES CORPORATION, et al., v. J. JULIEN SOUTHERLAND.

154 So. 894.
Division A.
Opinion Filed April 30, 1934.
Petition for Rehearing Denied June 17, 1934.

636

*J. O. Phillips,* for Appellants;

*J. Julien Southerland* and *Copeland & Therrell,* for Appellee.

ELLIS, J.—This suit was begun by J. Julien Southerland in the Circuit Court for the Eleventh Circuit in Dade County against Bay View Estates Corporation, L. T. Cooper Company, Tresulee Company, Municipal Investment Company, all corporations, Ethel M. Hauk and her husband, Paul Hauk, and J. O. Phillips.

The suit is in equity and is a creditor's bill in which it is sought to declare null and void certain conveyances, mortgages and assignments of mortgages, and that the lands affected by such transactions be declared to be the property of Bay View Corporation and subject to a certain judgment lien held by the complainant against that corporation.

The judgment lien was in the form of a deficiency decree obtained by the First Trust & Savings Bank, a corporation, as Trustee against Bay View Estates Corporation in June, 1931, in the United States District Court for the Southern District of Florida. The suit in that case was brought to enforce a mortgage lien given by the Bay View Estates Corporation to J. K. Dorn Real Estate & Investment Company and by that Company assigned and transferred to the First Trust & Savings Bank, as Trustee, together with the promissory notes, four in number aggregating seventy thousand dollars face value, for the payment of which the mortgage was executed to secure. The suit resulted in a decree in favor of the complainant, a sale of the mortgaged land and deficiency judgment in favor of the complainant in the sum of thirty-three thousand nine hundred and forty-eight dollars. In August, 1931, the judgment was assigned to

the complainant in this cause, J. Julien Southerland. The notes secured by the mortgage were dated in July, 1925.

The Bay View Estates Corporation in October, 1927, conveyed certain lots to Tresulee Company, which deed of conveyance was duly recorded in November, 1927. The Tresulee Company gave a note to the vendor for ten thousand dollars and a mortgage on the lands to secure the payment of it. In November, 1930, the Bay View Estates Corporation assigned the mortgage to L. T. Cooper Company. Those transactions were alleged to be without consideration.

In October, 1927, the Bay View Estates Corporation conveyed certain other lots to Tresulee Company, and in November following that Company executed its note for three thousand dollars and a mortgage on the lots to secure its payment to the vendor. In August, 1931, the Bay View Estates assigned that mortgage to Ethel M. Hauk, who was president of the corporation. Those transactions were alleged to be without consideration.

In October, 1927, the Bay View Estates Corporation conveyed certain other lots to Tresulee Company which Company in December, 1928, executed to the vendor its note for three thousand dollars and a mortgage on the property to secure its payment. That note and mortgage also were assigned by the Bay View Estates Corporation to Ethel M. Hauk in August, 1931. Those transactions were alleged to be without consideration. During the same month in 1927 other conveyances were made to the Tresulee Company, all of which alleged to be without consideration.

In April, 1928, Municipal Investment Company executed a mortgage to the Bay View Estates Corporation to secure an indebtedness of fifteen thousand dollars. That mortgage was assigned to Ethel M. Hauk without consideration, so it is alleged.

It is alleged that L. T. Cooper during his lifetime owned and controlled the Bay View Estates Corporation and Tresulee Company and was the husband of Ethel M. Cooper, who after his death became Ethel M. Hauk and President of the Bay View Estates Corporation; that L. N. Conrad at the time of the execution of mortgage to Dorn Real Estate and Investment Company was vice-president of the Bay View Estates Corporation and president of Tresulee Company.

The bill does not allege that the deficiency judgment obtained by the First Trust & Savings Bank as Trustee against the Bay View Estates Corporation has ever been recorded in Dade County, Florida, but a copy of the decree granting a deficiency judgment in the case by the Judge of the United States District Court was attached to the bill and made a part of it. It appears from that exhibit that a copy of the judgment was recorded in Book 9 of Satisfaction and Assignment of Judgment of the public records of Dade County on September 10, 1931.

The bill of complaint in this case was filed in July, 1932. On October 3, 1932, Mrs. Hauk moved to dismiss it and Paul M. Hauk, her husband, answered disclaiming any knowledge of the matter alleged. The Tresulee Company also answered the bill. It averred that the complainant had full knowledge of all the assignments and mortgages alleged in the bill when he obtained by assignment the deficiency decree and more than four years has passed since the recording of the various instruments described in the bill; averred a "good and valid" consideration paid for the transfer to it of all the properties described and denies any intention to defraud the complainant or his predecessors in ownership of the decree. The answer was full as to every allegation and concluded with a motion to dismiss the bill.

On the same date Mrs. Hauk answered the bill. Her

answer was likewise full as to the material allegations of the bill, averred consideration paid for the transfer to her and denied all charge of fraud and set up a correspondence between her attorneys and the complainant as attorney for the First Trust & Savings Bank in the case against Bay View Estates Corporation in which he advised her attorney concerning the foreclosure proceeding and in which he stated that neither Mrs. Cooper, who afterward became Mrs. Hauk, nor any of the Cooper heirs, had any present interest in the matters involved and suggested that her attorneys file an answer disclaiming any interest in the property involved. The answer also closed with a motion to dismiss the bill.

On the same date, October 3, 1932, the Bay View Estates Corporation answered. The answer is full to every allegation made in the bill and denies that there was in any of the transactions alleged any element of fraud, lack of consideration or intention to hinder or delay any creditor. Answering as to the foreclosure proceeding it averred that the notes were understood by the parties to the transaction not to represent an indebtedness of the Bay View Estates Corporation, but were executed solely to indicate the amount which the purchaser of the property to whom the Bay View Estates Corporation had conveyed it and who had assumed the debt had agreed to pay, that such was fully understood by the J. K. Dorn Real Estate and Investment Company to be the nature of the transaction and was so understood by the First Trust & Savings Bank when it acquired the notes and mortgage as Trustee; that the transfer was without consideration and the Bank in the matter was merely acting in the capacity of Trustee for Dorn Real Estate and Investment Company.

It also avers that the defendant had no knowledge of the existence of such deficiency decree until the complainant

had filed the bill in this case. The answer also averred that the complainant had full knowledge of all transfers of property by the defendant as alleged in the bill of complaint. The answer specifically denies that any of the transfers of property referred to in the bill were made without consideration, but on the contrary avers that each was made for "good and valid consideration."

The answer also closes by a motion to dismiss the bill.

J. O. Phillips also answered the bill on the same date in which he disclaimed any knowledge of the material allegations of fact contained in the bill. The answer also avers that the assignment to the defendant was for a good and valuable consideration. The answer also closed with a motion to dismiss the bill.

On November 7, 1932, a month, and several days after the answers were filed, the Chancellor, on motion submitted the same day by complainant, ordered that the complainant be allowed until November 10, 1932, "to file motions to strike all or parts of the answers of the several defendants in this cause."

On November 10, 1932, J. O. Phillips for himself and on behalf of Bay View Estates Corporation, Tresulee Company, Municipal Investment Company and Ethel M. Hauk moved the court to strike the complainant's motion to strike portions of the answers of defendants, which pursuant to the court's order above mentioned had been filed on that date. The ground is that the order to allow the complainant to file such a motion is in violation of the Chancery Practice Act of 1931; that under such Act the cause was at issue on October 13, 1932; that no order was made by the court in the meantime; that no notice was served on defendants or their legal representatives of the complainant's motion for the order he obtained to file a motion to strike portions of the answer.

On November 16, 1932, the Chancellor entered an order allowing an amendment to the bill of complaint; and on December 13, 1932, the complainant caused to be filed a motion that, in view of the pending motion to strike, the proceedings in the cause be stayed until those motions shall be disposed of by the court. The court by an order dated December 10th, three days prior to the date on which the motion was filed, granted the motion ordering that "progress in this cause shall be stayed until all pending motions to dismiss and strike from the answers of the respective defendants and all other pending matters shall have been disposed of and that said cause shall not be at issue until the further order of this court."

On April 17, 1933, the Chancellor entered an order reciting that the "cause came on to be heard on motion of the plaintiff and the several motions of certain defendants after due notice and was argued by counsel."

The order denied the motions contained in the several answers to dismiss the bill. It also denied the motion to strike the complainant's motion to strike portions of the answers of the several defendants. The Municipal Investment Company was dismissed as a defendant. That the motion to strike "various parts of the answers of the defendants, Bay View Estates Corporation, Tresulee Company, Ethel Hauk and J. O. Phillips, be reserved for the time being" and that "further proceedings in this cause be and they are hereby stated until the further order of this Court, except proceedings by plaintiff to obtain service on the defendant L. T. Cooper Company." The order recited that "service had not been obtained by plaintiff" on that defendant.

We interpret the word "stated" in the above order to mean *stayed* and the phrase "service had not been obtained" to mean *service of process had not* been obtained.

In the view we have of the case it is unimportant what meaning is supplied in place of those terms.

On the 29th day of April Bay View Estates Corporation, Tresulee Company, Ethel M. and Paul Hauk and J. O. Phillips entered their appeal from the following named orders of the Chancellor: one made November 7, 1932, recorded in Chancery Order Book 273, at page 465. That order does not appear from the transcript to have been recorded. It related to an extension of time to file motions to strike all or parts of the answers of the several defendants. The order of April 17, 1933, was stated in the notice of appeal to have been recorded on that date in Chancery Order Book 295 at page 154. That order related to the denial of the several motions to dismiss the bill of complaint and denial of the motion to strike the complainant's motion to strike portions of the answer of the several defendants which has been referred to above. The appeal was returnable to this Court on May 30, 1933.

As the record is here presented we are of the opinion that there are two questions only involved.

One is whether the Chancellor had authority in view of the Chancery Act of 1931 to make the order of November 17, 1932, without notice to defendants allowing the complainant until November 10, 1932, in which to file motions to strike all or parts of the answers of the several defendants which were filed on October 3, 1932. The other question is presented by the order of April 17, 1933, which denied the motions of the several defendants to dismiss the bill of complaint, which motions questioned the propriety of a suit of this character resting upon a deficiency decree obtained in the United States District Court for the District in which the lands involved in this cause lie, which decree has been recorded in the county in which this suit

was brought and no showing made that an execution issued upon that decree has been returned *nulla bona.*

The facts which appear in this record which may be considered as related to the two questions presented are as follows: The bill was filed July 2, 1932. All the defendants named except Municipal Investment Company and L. T. Cooper Company answered the bill on October 3, 1932, but the Municipal Investment Company joined in the motion of November 10th to strike the complainant's motion to strike parts of the defendants' answers. The motion for extension of time to move to strike portions of the answers of the several defendants was made November 7, 1932, and granted on the same day. No notice was given to the defendants either of the presentation of the motion or the order granting it. The hearing of the motion appears to have been *ex parte* as the motion was made and granted on the same day.

The mortgage, a suit to enforce which was begun in the United States District Court, was dated in July, 1925. The notes and mortgage were sold, assigned and transferred to the First Trust & Savings Bank as Trustee, without naming the *cestui que* trust, three months after the first of the four notes became due. The deficiency decree was entered on May 22, 1931, and was assigned to the complainant on August 18th of that year. It is not alleged that the decree has been recorded in the records of the Circuit Court for Dade County. A copy of the judgment entry and assignment of it to complainant is attached to the bill as exhibit 1 and made a part of the bill. That exhibit shows it to have been recorded in "Book 9 of Sat. & Assgn. on Page 71, File No. G17977 of Judg." as appears by a certificate of the Clerk of the Circuit Court for Dade County. On the back of the document appears a statement by the Clerk of the Circuit Court that it was "recorded in Book 9 of Sat.

& Assgn. of Judg. on page 71." There is no allegation that execution was ever issued upon the decree and returned *nulla bona.*

The transaction alleged to have been entered into between the various defendants and which the complainant charges were fraudulent as in fraud of the creditors of Bay View Estates Corporation occurred in October, 1927, and one transaction in April, 1928; that Ethel M. Hauk was formerly the wife of L. T. Cooper, deceased; that Cooper during his life owned and controlled the Bay View Estates Corporation and Tresulee Company and that Mrs. Hauk has succeeded to his interests and is principally interested in the litigation.

Chapter 14658, Acts of 1931, commonly known as the Chancery Act, was designed to expedite chancery proceedings. The need for such legislation had for a long while commended itself to the consideration of the Florida State Bar Association and a bill was prepared by that organization and by it caused to be introduced in the Legislature of Florida in furtherance of that idea. The bill as prepared was adopted without amendment and became a law in June, 1931. See McCarthy, Chancery Act Florida, 1931, preface.

In the case of Earle v. Detroit & Security Trust Co., 103 Fla. 618, 138 South. Rep. 65, Mr. Justice DAVIS, speaking for the Court, said: "The new Chancery Act expressly repeals Chapter 13660, Acts of 1929, *supra,* and Section 48 thereof was obviously adopted to supply a new rule in harmony with the Federal rule to take the place of the rule which was abolished with the repeal of Chapter 13660." The learned Justice also said that the Act "completely revises the chancery practice in this State."

See also State v. Rowe, 110 Fla. 141, 148 South. Rep. 588, where a Circuit Judge was required by mandamus in

a divorce case to proceed under the provisions of the Chancery Act to hear the complainant's proofs notwithstanding a local rule of the Circuit Court *contra*. Mr. Justice BROWN and the writer dissented upon the ground that the Act did not apply in such cases or, as Mr. Justice BROWN stated, that he was doubtful if the Chancery Act "was intended to circumscribe the exercise of reasonable discretion by the circuit judges in protecting the public interests in divorce cases, and in the prevention of collusive or fraudulent divorces."

So it will be observed that the question of the flexibility of the Chancery Act to permit of the exercise of discretion on the part of the Chancellor to depart from the practice prescribed by the Act when the Chancellor deemed such departure to be promotive of the ends of justice was directly brought to the attention of the court in that case and the Chancellor was commanded to proceed as the Act commanded.

The terms of the Act are designed to promote the ends of justice. Every opportunity is offered to present all points involved in a case either in behalf of the complainant or defendant, but it places upon the solicitors in the case, the representatives of the parties, the duty of presenting the questions speedily and with the least delay to the end that justice may be expeditiously administered.

We do not say that in an emergency, produced by conditions over which the parties may have no control, the Chancellor may not upon a proper showing after due notice depart from the express rules prescribed by the Act to the end that a cause may be completely presented and the court be fully advised of all material points, but in view of the history of the Act, the pressing necessity for its adoption to get away from the often too manifest tendency to procrastination and confusing multiplicity of unessential de-

tail and consequent inefficiency in the system of administrative justice, we are unable to approve as in conformity with either the letter or spirit of the Act an arbitrary departure from its terms on motion of one party heard without notice and *ex parte* without so much as an excuse for the delay in the progress of the cause sought to be obtained.

Section 38 of the Chancery Act, *supra,* provides that in the absence of a special order of the court, ten days and no longer shall be allowed the complainant in which to move to strike the answer or any part thereof. The period of ten days shall begin to run from the time the answer is required to be filed.

Section 39 provides that at the expiration of ten days from the filing of the answer, if there be no counterclaim the cause shall be deemed at issue. If, however, within such period of ten days a motion is filed to strike the whole of the answer or reply, or if the cause is set down for hearing on bill and answer, the cause shall not be deemed at issue until the points of law so presented shall have been ruled upon by the court.

The Committee note appended to Section 38 states that the purpose of the section is to fix a period of ten days within which a motion may be filed to strike such pleading. The necessity for the provision grew out of the abolishment of replications which renders it often difficult to know when a cause is at issue. Section 37 of the Act abolishes general replications to answers.

In the case of Esch v. Forster, 99 Fla. 717, 127 South. Rep. 336, this Court said: It is the duty of the Court to facilitate and not retard the determination of causes, and that the rules are made to enable the Court to perform that duty. If a party claims that a rule has been waived the burden is on him to prove it; that the appellate court is bound by the rules. They are binding on the Court and

its Clerk as well as on the litigants and their counsel. In that case, without expressing any opinion upon the merits of the controversy, the Court reversed the decrees and orders because, as was held, the defendant should not have been summarily shut off from the presentation of their case.

In the case at bar the cause was at issue under the rules and the defendants were entitled to a trial of those issues of fact as presented by their answers and the issues of law as presented by their motions to dismiss without allowing further time than the rule allowed for the presentation of the questions.

It may be said that the order of April 17, 1933, did settle the questions of law because the court denied the motions to dismiss contained in the several answers of the defendants. However that may be, the court reserved for the time being decision on the "plaintiff's motion to strike various parts of the answers of the defendants, Bay View Estates Corporation, Tresulee Company, Ethel M. Hauk, and J. O. Phillips." So progress in the cause has been delayed and the purpose of the Chancery Act defeated by the court's order.

The first question is therefore deemed by us to be sustained by the appellants and that the order of November 7, 1932, extending time within which to present motions to strike all or parts of the answers was error.

As to the second question involving the right of the complainant in the circumstances to maintain the suit, which is one, as we construe it, to set aside certain transactions as being in fraud of a creditor of the Bay View Estates Corporation, we have the following to say:

A "creditor's bill" is a suit in equity by a judgment creditor to reach property to which defendant in execution has only an equitable title not subject to execution at law and

when the creditor has in vain attempted to obtain satisfaction of his judgment. See George E. Sebring Co. v. O'Rourke, 101 Fla. 885, 134 South. Rep. 556.

In the case of Isaacs v. Mulray, 112 Fla. 197, 150 South. Rep. 232, Mr. Justice BUFORD, speaking for the Court, said: "It makes no difference whether a debtor is solvent or insolvent if he conveys property without consideration for the purpose of hindering or delaying creditors, the conveyance is in fraud of creditors and may be set aside by a court of equity." Decisions of this Court were cited to support that doctrine. The thought was suggested in that case that the creditor's suit to subject the property held in trust for the judgment debtor might be considered as "process in aid of the enforcement of the judgment."

The rule has been frequently announced by this Court that a voluntary conveyance by one who is indebted is presumptively fraudulent when attacked by a judgment creditor upon a debt existing at the time of its execution. In such cases it is not necessary to show that the debtor was actually insolvent at the time he executed the conveyance. See McKeown v. Allen, 37 Fla. 490, 20 South. Rep. 556; Beasley v. Coggins, 48 Fla. 215, 37 South. Rep. 213.

In the case of Jackson v. Citizens Bank & Trust Co., 53 Fla. 265, 44 South. Rep. 516, the doctrine was announced that a purchase made by one not a creditor is fraudulent as to creditors, even though the purchaser paid an adequate consideration for the property, if the seller at the time of the sale had a purpose or intent to defraud his creditors or to hinder them in the collection of their claims and the purchaser knew of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence would have led to the discovery of the fraudulent purpose of the seller, and the buyer did not make the inquiry. See also

Ostend Realty Co. v. Biscayne Realty & Ins. Co., 99 Fla. 1221, 128 South. Rep. 643.

The allegations of the bill, insofar as they relate to the matter of voluntary conveyances by the Bay View Estates Corporation and knowledge of the purchasers as to the fraudulent purpose of such conveyances, are in our opinion sufficient against the attack by motion to dismiss, but whether there is a sufficient showing in the bill that at the time of the alleged fraudulent conveyances the Bay View Estates Corporation may be considered such a debtor to the Dorn Real Estate & Investment Company as to render a voluntary conveyance fraudulent as to that Company is doubtful. No allegation appearing to the contrary, the Dorn Real Estate & Investment Company, mortgage, had ample security for the payment of the debt held by it against the Bay View Estates Corporation.

This Court is not committed to the doctrine that a debtor, who had given to his creditor ample security for the payment of the particular debt, is guilty of a fraud upon that particular creditor if in those circumstances the debtor conveys his remaining property or a portion of it to another voluntarily and without consideration. The rule is that a conveyance by an insolvent debtor of his property to another voluntarily is *prima facie* evidence of fraud upon his creditors. Wait on Fraudulent Conveyances (2 Ed.) 28; 2nd Story's Eq. Jurisprudence, Sec. 353; United States v. Hooe, 3 Cranch. (U. S.) 73, 2 L. Ed. 370.

The presumption is rebuttal, however. Whether the presumption obtains at all where the debtor has satisfied his creditor by ample security for payment of the particular debt and subsequently conveys his other property is doubtful.

A fraud upon creditors consists in the intention by the debtor to prevent his creditors from recovering their just

debts by withdrawing his property from the reach of his creditors. See McKibbin v. Martin, 64 Penn. 352.

As the fraud rests upon the debtor's intent it must exist at the time of the transfer. Sommerville v. Horton, 4 Yerger (Tenn.) 541, 26 Am. Dec. 242.

The mere fact that a person may be indebted to another does not render a conveyance of his property a fraud in law upon his creditors. The owner of property whether real or personal possesses the absolute right to dispose of all or any part of his property as he sees fit. The only restriction imposed by law is that no transfer shall be made which will interfere with the existing rights of other persons. If the right of disposition is exercised to the injury or prejudice of other persons the courts will then interfere and the question arises whether the circumstances constituted *ipso facto* a fraud upon the complaining creditors or whether the alleged facts raise a presumption of fraud.

The English Statute, 13 Eliz. c. 5, is regarded as the foundation of all subsequent law relating to fraudulent conveyances. It is merely declaratory of the common law, for long before statutory enactments affecting fraudulent transfers the rules of common law, supposed to be founded in Magna Charta, were invoked to prevent a debtor from selling, mortgaging or transferring his property with intent to hinder, delay or defraud *existing* creditors.

A transfer of property by a debtor is not fraudulent either under the English statute or the common law unless the act is directed against creditors who have just, lawful and existing claims. Even if the debtor intends to deceive the public, if his act in transferring his property does not hinder or delay his creditors no legal fraud exists.

The early English case referred to in the books as Twyne's Case, 3 Coke 80, 1 Smith's Leading Cases 1, contains a

discussion of the history, purpose and application of the statute.

To constitute a fraudulent conveyance there must be a creditor to be defrauded, a debtor intending fraud, and a conveyance of property which is applicable by law to the payment of the debt due. See 20 Cyc. 345; 2 Kent's Com. 440.

The bill of complaint does allege in general terms that the transfers were made by the Bay View Estates Corporation with intention to defraud the complainant "and/or his assignors or predecessors in interest in the enforcement and/or collection of the indebtedness aforesaid" and that the conveyances have resulted in "hindering, delaying and defrauding plaintiff in the recovery on his said judgment." Even if the above allegations may be considered sufficient to charge fraud under the statute, it is manifestly untrue as to complainant because he did not become a creditor until the assignment to him of the decree in the foreclosure cause a year or two after the conveyances or transactions mentioned. He was not, therefore, at the time of the transaction an *existing* creditor and it was impossible for the Corporation to have a fraudulent intent as to complainant at the time of the transfer.

There is no allegation in the bill that the security held by the Dorn Real Estate and Investment Company was inadequate to secure the debt alleged to be due it. From any allegation to the contrary contained in the bill, the security was ample, the debtor fully satisfied, and the security merely became inadequate in after years by depreciation in value of the security over which the Bay View Estates Corporation had no control, in which case there could.exist at the time of the transfer no intent or purpose to hinder or delay the Dorn Real Estate and Investment Company, if indeed it may be regarded as a creditor of the Bay View

Estates Corporation at the time of the alleged transfer of property. Of this, something more later.

The complainant rests his case on the proposition that as he became the purchaser of the decree he became a creditor of the Bay View Estates Corporation from the time the Dorn Real Estate and Investment Company became a creditor of the defendant company. But that is a fallacy which is apparent. His purchase of the decree cannot be said to have been upon the faith of the credit which the transferred property imparted to the Bay View Estates Corporation, property which it had sold years before the complainant voluntarily became the owner of the decree. The transfers were not void, they were voidable if at all by any action which the Dorn Real Estate and Investment Company may have taken to set them aside as a fraud upon it as a creditor, but that Company took no such action, had apparently acquiesced in the transactions which were in no wise secret but open and "above board." The foreclosure proceedings were not begun until years after the transfers, so far as any allegation in the bill appears to the contrary, and those transactions were valid as between the parties to them. See Bellamy v. Bellamy, 6 Fla. 62; Kahn v. Wilkins, 36 Fla. 428, 18 South. Rep. 584; Volusia County Bank v. Bigelow, 45 Fla. 638, text 645, 33 South. Rep. 704.

What right did the complainant acquire other than the right to enforce a debt acquired by him several years after the transfers? Was the abandoned and waived right of the Dorn Real Estate and Investment Company, if it had any, revived by the assignment of the decree by its assignee of the mortgage which rights that assignee, if it had any to attack the transfers, had also waived and abandoned.

The alleged transfers under the allegations of the bill were not presumptively fraudulent as against any attack that the Dorn Real Estate and Investment Company, mort-

gagee, may have made upon them and therefore not presumptively fraudulent as against complainant.

Sections 5771 and 5776 C. G. L., 1927, are but restatements of the law on fraudulent conveyances as declared by the two English Statutes, 13 and 27 Eliz. The latter rendering fraudulent conveyances void as to purchasers of the same land. Under that Statute and Section 5776, *supra,* mortgagees are regarded as purchasers.

The bill of complaint cannot be regarded as one to set aside fraudulent conveyances by a mortgagee or his assignees because the Section 5776, *supra,* had no applicability as the same lands described in the mortgage are not involved in the alleged transfers. To succeed in this case the mortgagee must be treated as a creditor. He cannot be both purchaser and creditor for the purpose of his suit.

This Court has held that a creditor secured by a mortgage may attack fraudulent conveyances by his debtor on the ground that although creditors take security they also " 'trust upon the general credit of the debtor's property and a confidence that he will not diminish it to their prejudice.' " See Robinson v. The Springfield Co., 21 Fla. 203. But the doctrine has not been extended so that it is applicable to the purchaser or assignee of a judgment or decree obtained some years after the conveyances attacked when the title to the properties have passed to others. In such cases the purchaser or assignee of the judgment or the decree cannot be said to have trusted "upon the general credit of the debtor's property." The unqualified rule as announced in the Robinson case, *supra,* if applied to assignees of judgments or deficiency decrees obtained in mortgage foreclosure proceedings would unsettle the security of real estate transfers indefinitely, at least for a period of twenty years.

We hold that to make the rule applicable to creditors who hold mortgage security for the payment of their debts, the bill should allege that the security at the time it was pledged was inadequate to secure the payment of the debt to show that the creditor did in fact rely upon the "general credit of the debtor's other property." If the security was ample at the time of the transfers attacked the imputation of fraud from a voluntary conveyance by the debtor of other property does not obtain. We think the bill was deficient in its allegations in these particulars.

Another question is, will a State Court exercising equitable jurisdiction lend its aid to the enforcement of a decree or judgment obtained in a Federal court to set aside alleged fraudulent conveyances of the debtor's property in any case, especially when there is no allegation that execution has issued upon the decree or judgment and returned *nulla bona*.

The common law knowing nothing of equitable estates and interests did not permit them to be taken on execution. Equity by a creditor's suit enables the creditor when necessary to have a judicial sale of such property to satisfy his debt. If a debtor conveys land to defraud his creditors the conveyance is void at common law as well as in equity and the land may be subjected to execution by a judgment creditor but the purchaser at execution sale will take the land subject to the cloud created by the previous conveyance. Equity, therefore, takes jurisdiction to remove this cloud before instead of after the judicial sale, declare the conveyance to be void, and by way of complete relief orders a sale of the land to satisfy the debt. The proceeding is in effect, if not in its form, an equitable execution issued out of a chancery court in aid of a judgment obtained in the common law forum of the State's judicial system.

In such case the rule requires a judgment to be obtained in the State court and evidence that all remedies have been exhausted to enforce the common law judgment. If a deficiency decree in a chancery court is obtained an execution under our statutes would issue on such decree, in which case the holder of the decree would be required to pursue his remedy under the execution, exhaust his remedy thus provided before equity would entertain his bill to set aside conveyances as a fraud upon the debtor's creditors. Even if the creditor avails himself of the Statute, Sec. 5035, C. G. L., 1927, and brings his bill before reducing his claim to judgment, he must have first instituted his action in the proper courts at law for the collection of his claim and then no decree will be entered upon the creditor's bill until the claim shall have been reduced to judgment. See Adam Brewing Co. v. Bowman, 92 Fla. 509, 109 South. Rep. 583.

In the case of Armour Fertilizer Works v. First Nat. Bank, 87 Fla. 436, 100 South. Rep. 362, Mr. Justice TERRELL, speaking for the Court, said: "A creditor's bill is one brought by a creditor who has secured judgment at law, and has in vain attempted at law to obtain satisfaction, and who sues in equity for the purpose of reaching property which cannot be reached by execution at law. The nature, purpose, and scope of such a bill is to bring into exercise the equitable powers of the court to enforce the satisfaction of a judgment by means of an equitable execution because execution at law cannot be had."

A foreign judgment can no more constitute a basis for the ordinary creditor's bill than the general indebtedness itself. The creditor must first sue upon that judgment and recover a new judgment and issue an execution thereon and have it returned unsatisfied and thus establish the fact that he has exhausted his remedy at law. In some states a judgment in a Federal court is treated for the purpose of the

rule obtaining in the prosecution of creditors' bills as a foreign judgment. That rule obtains in New York, Illinois, Ohio. See Tarbell v. Griggs, 3 Paige's Ch. 207, 23 Am. Dec. 790; Winslow v. Leland, 128 Ill. 304, 21 N. E. Rep. 588; Dilworth v. Curts, 139 Ill. 508, 29 N. E. Rep. 861.

We are indebted to solicitor for complainant for the above citations. See also 27 C. J. 738; 15 C. J. 1394.

In any case, an execution should have issued on the judgment and returned unexecuted. In some states special statutory provision is made for Federal judgments as a basis for a creditor's bill in a State court. But no such statute exists in this State. Chapter 10166, Laws 1925, Sec. 4492, C. G. L. 1927, 14749, Laws 1931, do not make any such provision directly or indirectly, if indeed under the latter Act a judgment obtained in a Federal court duly recorded as the statute directs constitutes a lien upon the judgment debtor's property at all.

The latter statute which was in force when the decree in this case entered by the Federal court was recorded, required certified transcripts of the judgments and decrees of the United States courts which may be presented to the Clerk of the State Court for record to be recorded in the record of foreign judgments. Section one of the Act requires that where a judgment of a Circuit Court is required to be recorded before a lien shall attach judgments of the United States Courts are authorized to be recorded, docketed and indexed and otherwise conform to the rules and requirements relating to judgments and decrees of the Circuit Courts of this State.

Assuming that this Act definitely provides that a deficiency decree entered in the Federal court shall become a lien upon the lands of the judgment debtor when the transcript of the decree shall have been recorded as the statute

requires, the bill in this case does not allege nor does the exhibit attached to the bill show that the transcript of the decree was "registered, recorded, docketed, indexed and otherwise conformed to the rules and requirements relating to the judgments and decrees of the Circuit Courts of this State." See Sec. 4948, C. G. L., 1927, requiring such decrees to be recorded in the Chancery Order Book.

The matter of a lien of the decree, however, is not material, because the complainant brings his suit upon the theory that when the deficiency decree was obtained the legal title to the property transferred had passed out of the Bay View Estates Corporation, and was held for it as an equitable estate. Those transfers he seeks to annul as being a fraud upon him, a creditor who has reduced his claim to judgment and exhausted all his legal remedies in vain to obtain execution of the decree, but he shows no writ of execution upon his deficiency decree and of course no return that it has not been satisfied.

In this kind of a suit a judgment of a State Court would not be aided by an equitable execution until the showing had been made that all legal remedies had been exhausted.

We do not decide now the question whether equity will interfere to aid a judgment or decree of a Federal court in a suit to set aside conveyances as a fraud on creditors. The doctrine that the complainant having chosen his forum must look to that forum for his remedies before applying to a State Court for relief and that a decree or judgment of a Federal court is the judgment or decree of a foreign jurisdiction insofar as this kind of litigation is concerned is a question on which the authorities are not in accord.

The orders of the Chancellor were erroneous and are reversed for the reasons stated in this opinion.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.