**Frederica GONTERMAN, Appellant,**

v.

**John NICHOLAS, as Trustee in Bankruptcy of Osceola Groves, Inc., Appellee.**

No. 17559.

United States Court of Appeals
Fifth Circuit.

Oct. 6, 1959.

Rehearing Denied Nov. 17, 1959.

B. F. Paty, West Palm Beach, Fla., Paty, Downey & Daves, West Palm Beach, Fla., for appellant.

Edward B. Quinan, Miami, Fla., for appellee.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment by the trial court without a jury setting aside as a fraudulent conveyance a deed from Osceola Groves, Inc., to Mrs. Frederica Gonterman.

In 1951 Osceola Groves was a small family corporation which had owned acreage near Lake Okeechobee, Florida. The stockholders were C. J. Gonterman, one share; Mrs. Gonterman, one share; and her father, Fred W. Bryan, twenty-three shares. They were also the officers and directors. This land it had sold and was still in the process of selling in small plots or units. Each unit was sold on a contract which provided that the corporation would plant a specified number of citrus trees and bring them into a bearing state in return for certain annual payments of the purchase price and the payment of a certain management fee by the purchaser. The record indicates that there were in 1951 96 outstanding contracts.

The record is silent as to any complaints, criticism or claim being made by or on behalf of any purchaser until 1954, at which time a lawyer advised certain of them to withhold their annual

payments because of failure of titles. An involuntary petition in bankruptcy was filed by several purchasers on March 28, 1955; adjudication followed on July 28, and Nicholas was elected trustee.

On September 1, 1951, being advised by counsel that a tract of 21.4 acres desired by Mrs. Gonterman for development as a tropical park could legally be sold to her if sold for a fair consideration, the directors adopted a resolution authorizing the sale to her for $10,000, payable $1,000 in six months and $9,000 in nine annual installments, at 4% interest, and subject to the balance of a $13,000 mortgage (the balance was then $8,000) which covered other property as well. The property was deeded to her in the form of a warranty deed, but, of course, she got only what the corporation had, an equity. She immediately paid the first $1,000 note by having the corporation credit her for $1200 for earned salary due her, leaving an additional $200, which was credited on the $9,000 note. On October 18 (less than two months after the sale) Mrs. Gonterman paid the balance of $8,800 in cash to the corporation. This cash was made available to her in the following manner: Mr. Gonterman bought the 23 shares of stock owned by Mr. Bryan; he sold 12½ shares to two others for $35,000 cash; he gave $8,800 of this to Mrs. Gonterman to pay on her note; he loaned $13,500 of it to the corporation; he voluntarily paid approximately $8,000 as a balance due on a mortgage owed by the corporation, and also paid all but $129.59 of the balance on the company's debts.

Later, upon a threat of foreclosure on her 21.4 acre tract Mrs. Gonterman paid $5,000 for a release on the 21.4 acres. She thus paid out $15,000 in cash for the tract.

On the trial, one witness testified that in his opinion this property, which he appraised for the first time in 1955, was worth $18,100 in 1951. He arrived at this by assigning a value of $8,400 to the land and $9,700 for the buildings, which, on the trial, he first valued at estimated cost less depreciation, but subsequently by the proper standard of valuation. Three witnesses for the defendant valued the property at less than $10,000. Gonterman testified that the buildings had all been constructed out of used lumber bought for $650, and at a labor cost of $500 or $600.

Thus, Mrs. Gonterman obtained title in 1951 to 21.4 acres of land valued by her and her witnesses at less than $10,000, and by the trustees' witnesses at $18,100, for $10,000 cash and credits for services and subject to an $8,000 mortgage to release which she paid $5,000 cash. She immediately placed her deed on record, went into possession, paid the annual taxes and spent between $50,000 and $65,000 over the years improving it. She built a tropical park and obtained income by charging admissions to the public. The record does not disclose the relation of the income from the property to the expenditures made by her for its improvement.

The trial court held that the introduction of several of the 96 contracts in evidence was sufficient to prove that there were creditors in 1951, although there was no evidence that there had been any breach of contract as to any single purchaser and no evidence that any person was making a claim as creditor against the company. The court also held that the evidence of $18,100 value as against the purchase price of $10,000 subject to $8,000 mortgage was sufficient evidence of inadequacy of consideration or bad faith as to require that the conveyance be set aside as fraudulent.

■ The Bankruptcy Act provides in Section 70, sub. e(1) that:

"A transfer made * * * by a debtor adjudged a bankrupt under the Act, which, under any Federal or State law applicable thereto is fraudulent, as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor."

Section 70, sub. e(3) of the Act gives concurrent jurisdiction to the courts of

bankruptcy and the state courts to entertain an action for the setting aside of such conveyance.

In determining whether there was an invalid conveyance which the trustee may set aside, we must look to the state law, for:

> " * * * when the trustee seeks to set aside a transaction by the bankrupt as fraudulent under 70(e) (1) the question of whether the alleged fraud was perpetrated at all must be determined according to the particular state * * * law governing the transaction."  4 Collier, Bankruptcy, 14th Ed. p. 1352.

And see Stellwagen v. Clum, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507.

The Florida statute which invalidates a fraudulent conveyance is Chapter 726, subsection .01, F.S.A., which reads in part as follows:

> " * * * [any conveyance] contrived or devised of fraud, covine, collusion or guile, to the end, purpose or intent to delay, hinder or defraud creditors or others of their just and lawful actions, suits, debts, accounts, damages, demands, * * * shall be from henceforth as against the person or persons, or * * * his, her or their successors * * * and assigns * * * deemed, held, adjudged and taken to be utterly void, frustrate and of none effect, any pretense, color, feigned consideration, expressing of use or any other matter or thing to the contrary notwithstanding;  provided that this section * * * shall not extend to any estate * * * in lands * * * which shall be * * * conveyed * * * upon good consideration and bona fide * * * ".

Appellant contends that there is no evidence upon which the trial court could find a violation of the Florida statute, because:  (1) It is not shown that there were any creditors of the company at the time of the conveyance;  (2) The consideration being full and adequate there was no evidence of intent to defraud anyone even if there were creditors.

Upon a careful consideration of the record we are convinced that appellant is right and that the judgment must be reversed.

■ It is the law in Florida that before a conveyance can be in fraud of creditors there must be creditors to be defrauded.

In Bay View Estates Corporation v. Southerland, 114 Fla. 635, 154 So. 894, 900, the Florida Supreme Court, having said that the Florida statute was a codification of the English law, said:

> "A transfer of property by a debtor is not fraudulent either under the English statute or the common law unless the act is directed against creditors who have just, lawful, and existing claims.  Even if the debtor intends to deceive the public, if his act in transferring his property does not hinder or delay his creditors, no legal fraud exists."

Here, the only evidence that there were any creditors of the bankrupt in 1951 was several contracts to purchase and contracts of the company to plant citrus trees.  There is no competent evidence that, as to any one of these purchasers whose contract is in evidence, there had been a breach of contract by the corporation at the time of the transfer complained of, or, for that matter, at any other time.  There was no proof that there were creditors who, in 1951, were in any way damaged by the transfer in question.

So, too, is there a complete failure of proof of bad faith in the conveyance and of any detriment to the corporation, for it is plain from the evidence that the corporation received $15,000 in cash and in discharge of its mortgage debts in return for the property.  Moreover, it is clear that when Mrs. Gonterman paid $10,000 on her notes her property was still subject to the $8,000 mortgage (later released to her for $5,000) so that she actually paid or was subject to pay-

ment of $18,000 in order to acquire good title for property which the appellee contended was worth $18,100. It is inconceivable that a conveyance, long acquiesced in by the parties (including outsiders who were owners of half the stock) and by all the so-called creditors could now be set aside at the instance of a trustee in bankruptcy because the consideration was $100 short of its asserted maximum value.

Appellee, and the trial court as well, criticized the manner by which Mrs. Gonterman obtained the cash which she paid on her notes. It is suggested that if Mr. Gonterman could obtain twenty-three shares of stock from his father-in-law which he could sell for $35,000, it was his duty to make this deal for the benefit of the corporation or in order to retire his own indebtedness. This entirely ignores the absence of proof that Mr. Bryan, Mrs. Gonterman's father, would have been willing to release his stock unless she was to have the benefit of the $8,800 which her husband used to pay for her property. The real source of the $8,800 was her father's stock, and there is no suggestion that he had any obligation to the corporation that would prevent his using his stock in order to raise the money for his daughter's benefit. It was undisputed that the arrangement between Gonterman and Bryan was made and this money was intended to be used to enable Mrs. Gonterman to buy the land before the transaction took place.

The records of the bankrupt for the years involved were sketchy and inadequate. Nevertheless it remains undisputed that for more than three years following the conveyance in suit the record discloses no claim by any creditors or any default by the company.

Although fraud is presumed in Florida in a contract between a creditor and one to whom there has been a transfer without consideration, Weathersbee v. Dekle, 107 Fla. 517, 145 So. 198, no

such presumption arises where there is proof of full and adequate consideration. Here the proof is clear that the wife paid, and/or became subject to the payment of, an amount that equalled almost to the penny the largest amount claimed by the trustee to represent the value of the property. Thus, even if a presumption of fraud arose because of the relationship of the parties, it was completely rebutted.

Except when read and carefully analyzed, the import of the financial transactions between the corporation and Mrs. Gonterman is not readily apparent. When the record is analyzed, however, it is plain that the trial court's understanding of the facts is not supported and its findings are clearly erroneous.

The judgment is reversed and remanded for the entry of judgment for appellant.