In the Matter of TRINITY BAPTIST
CHURCH OF BRADENTON,
FLORIDA, INC., Debtor.

Chris C. LARIMORE, Trustee, Plaintiff,

v.

STEWARDSHIP CONSULTANTS, INC.,
et al., Defendants.

Chris C. LARIMORE, Trustee, Plaintiff,

v.

Roy P. STONE, et al., Defendants.

Bankruptcy No. 81–1287.
Adv. Nos. 81–383, 81–476.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 10, 1982.

---

**530**

Douglas A. Wallace, Bradenton, Fla., for plaintiff.

A.T. Cooper and Linda M. Hallas, Largo, Fla., for Roy P. Stone.

D. Turner Matthews, Consultants & Wayne Guinn, Bradenton, Fla., for Stewardship.

Michael W. Ross, Bradenton, Fla., for Trinity Baptist Churches of Bradenton and Manatee County.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM OPINION AND FINAL JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case commenced by a voluntary petition filed by Trinity Baptist Church of Bradenton, Florida, Inc. (the Debtor). The matters under consideration are two complaints filed by Chris Larimore, the Trustee of the estate who seeks to avoid certain transfers claimed to be fraudulent pursuant to § 544(b) of the Bankruptcy Code. Although originally the trustee sought relief against numerous defendants, summary judgments granted in favor of the Trustee disposed of claims against all Defendants except Stewardship Consultants, Inc. (SCI) and against Wayne A. Guinn (Guinn).

The record as established at the final evidentiary hearing reveals the following facts germane to the resolution of the remaining claims of the Trustee.

SCI is a Florida corporation engaged in the business of the management and rehabilitation of financially distressed churches. The principals of the corporation are G.W. Hedman, a practicing attorney and Wayne A. Guinn, who is pastor of a church in Melbourne, Florida.

The Debtor is a non-profit Florida corporation formed in November of 1972. At the time pertinent to the matter under consideration, it operated an independent Baptist Church and school in Bradenton, Florida. In June of 1973, the Debtor purchased ten acres of real property located in Manatee County for approximately $130,000. Shortly thereafter, it constructed two buildings on the property, one to house the church sanctuary and administrative offices and the other to house the school. The Debtor also purchased extensive office and church equipment, and other furnishings. These acquisitions were financed through the sale of bonds which were sold beginning in June of 1973. The Debtor ultimately issued seven series of bonds totalling $486,000. The

last series was issued in June of 1977. The bonds called for periodic payments of interest and payment in full of the principal at maturity fixed at different dates in each series of bonds.

In spite of steady growth of the membership under the leadership of the corporate president and church pastor, Clyde N. Gault, in 1976 and 1977 the Debtor began to experience financial difficulties. In order to meet its pressing financial needs, the proceeds from current bond issues were used to pay the interest on previous issues. Eventually the Debtor became unable to meet the interest payment schedule on the bonds and its obligations to its other creditors. Some of the bondholders became apprehensive and threatened to file suit against the Debtor. At this point, SCI and Guinn stepped into the picture.

Rev. Gault initiated a meeting with Rev. Guinn who agreed to make a presentation to the members of the church on behalf of SCI, detailing the services which it could offer for the purpose of helping the church overcome its financial problems. These consultations culminated in a Financial Guidance Agreement (Agreement) (Pl's Exh. # 6) executed by the Debtor and SCI on June 5, 1978. Under this Agreement, SCI was to receive a fee equivalent to 4½% of the Debtor's total indebtedness plus an additional $150 per week until a financial program was instituted and all expenses were to be reimbursed. The fee was to be secured by all property of the Debtor. At that time, the Debtor's total debt amounted to approximately $547,000. Contemporaneously with the Agreement, the Debtor executed a Trust Agreement (Pl's Exh. # 8); a Deed conveying title of the Debtor's real property to SCI and Guinn as Trustees (Pl's Exh. # 7); and a Bill of Sale (Pl's Exh. # 14) transferring the bulk of the Debtor's personal property to SCI and Guinn as Trustees. There can be no doubt that these transfers were made without consideration from the Defendants and that they left the Debtor with no assets except a few small bank accounts, far less than the amount required to satisfy the Debtor's obligations.

After the real property was transferred, the Defendants leased the property to the Debtor for $300 per week. The Debtor made some "rent" payments, but failed to make the payments as scheduled and in fact paid only $15,900 during the period of July 1, 1978 through October 31, 1981. In spite of the transfers to the Defendants, the Debtor retained full possession, use and control of all of its real and personal property. Although the Debtor seriously defaulted in the rental payments, the Defendants never sought to evict the Debtor from the church premises.

After the transfer, bondholders were offered an opportunity to exchange their old bonds for "Certificates of Participation" created by the Trust Agreement. The Certificates provided that they were issued by the Debtor and were to represent obligations of the Debtor. Some of the bondholders took advantage of this opportunity, but many did not. In spite of the arrangement with SCI, the Debtor continued to have financial difficulties and several of the bondholders filed suit against the Debtor and the Defendants in the Manatee County Circuit Court, attempting to have the conveyance of the church properties set aside as fraudulent.

On January 14, 1981, the Defendants sold an undeveloped four acre tract of the church property for the sum of $111,000. The bondholders who actually filed suit received a total of $49,187.50 in settlement of their claims paid out of the proceeds of the sale. The Defendants also received $26,597 from the sale proceeds for consulting fees and trustee's fees. Attorney fees and costs were paid in the amount of $7,203.16 and the Defendants retained the remaining proceeds (approximately $20,000) which was placed in an interest bearing account.

On July 23, 1981, the Debtor filed a Petition for Relief under Chapter 7 of the Bankruptcy Code. In due course, Chris C. Larimore was appointed as Interim Trustee and later as the permanent Trustee and instituted these adversary proceedings seeking to avoid the transfers of the church properties to the Defendants as fraudulent

under § 544(b) of the Code and Fla.Stat. § 726.01.

Section 544(b) provides that the Trustee in Bankruptcy may avoid any transfer of an interest of the Debtor in property which is voidable under applicable non-bankruptcy law by a creditor holding an allowable unsecured claim. In order to prevail under this Section, the Trustee must establish first that, at the time the transaction under attack occurred, there was a creditor in fact in existence who was holding an unsecured claim allowable under § 502 of the Code; second, that the transaction could have been avoided by such creditor under the applicable local law, in this instance, under the laws of the State of Florida. There is no dispute that there were, in fact, creditors who held allowable unsecured claims against the Debtor at the time relevant. This leaves for consideration whether the transfers of the properties by the Debtor to the Defendants were voidable under the laws of the State of Florida.

Fla.Stat. § 726.01 provides, inter alia, that every conveyance or transfer of property made with intent to delay, hinder or defraud creditors is void and of no effect. Intent to defraud within the meaning of the statute is the debtor's intention to prevent his creditors from satisfying their debts. *Wimmers v. Blackburn,* 151 Fla. 236, 9 So.2d 505 (1942). The intent must exist at the time of the transfer which is under attack. *Bay View Estates Corp. v. Southerland,* 114 Fla. 635, 154 So. 894 (1934). An evil motive is not required in order to set aside a transfer. When the legal effect of conveyance is to delay or hinder creditors, it is fraud in law regardless of the actual intent of the debtor. *McKeown v. Allen,* 37 Fla. 490, 20 So. 556 (1896); *Whetstone v. Coslick,* 117 Fla. 203, 157 So. 666 (1934); *Livesay Industries, Inc. v. Livesay Window Co.,* 305 F.2d 934 (5th Cir.1962).

Certain facts and circumstances have been recognized as indicia or "badges" of fraud. The Florida Supreme Court in *Cleveland Trust Company v. Foster,* 93 So.2d 112 (Fla.1957) listed as the most important indicators of fraud as follows:

(a) Relationship between the debtor and the transferee.

(b) Lack of consideration for the conveyance.

(c) Insolvency or indebtedness of the debtor.

(d) The transfer of the debtor's entire estate.

(e) Reservation of benefits, control or dominion by the debtor.

(f) Secrecy or concealment of the transaction.

(g) Pendency or threat of litigation at the time of the transfer.

Each of the above-mentioned badges of fraud has evidentiary force in establishing the fraudulent character of a transfer. Although the badges of fraud may be inconclusive to establish fraud when considered separately, if they exist in combination, they "may by their number and joint consideration be sufficient to constitute conclusive proof" of fraud. *Florida National Bank of Gainesville v. Sherouse,* 80 Fla. 405, 86 So. 279 (1920).

Having considered the record with these factors in mind, the Court is satisfied that the transfers in question were fraudulent. The transaction arranged between the parties was far from being an arms-length transaction; there was no true consideration for the conveyance and it clearly resulted in insolvency for the Debtor. Virtually the entire estate of the Debtor was transferred, yet the Debtor retained use, control and benefit of the property transferred even though it failed to make the scheduled "rental" payments. Furthermore, several of the bondholders were threatening litigation prior to the date of transfers. The record firmly substantiates the allegations that the transfers were to prevent loss of the property at the hands of an individual creditor, at the expense of all of the bondholders. Clearly, the Debtor intended to hold those dissatisfied creditors at bay, and prevent levy and sale of the property, in hopes of rehabilitation and the satisfaction of all creditors. While admira-

ble, the end result of this scheme was nonetheless a hindrance and delay of creditors. As such, it is fraudulent and voidable under Fla.Stat. § 726.01, and voidable by the Trustee in Bankruptcy by virtue of § 544(b) of the Bankruptcy Code.

In accordance with the foregoing, it is

ORDERED, ADJUDGED AND DECREED that final judgment be, and the same hereby is, entered in favor of the Plaintiff and against the Defendant. It is further

ORDERED, ADJUDGED AND DECREED that the transfers of real and personal property which are the subject of this adversary proceeding, and which are evidenced by a Deed, executed on June 5, 1978, and recorded in the Official Records of Manatee County Book 909, Page 515, and a Bill of Sale executed June 5, 1978, be, and the same hereby are, declared null and void and of no further force or effect. It is further

ORDERED, ADJUDGED AND DECREED that the Defendants, Stewardship Consultants, Inc. and Wayne A. Guinn be, and the same hereby are, directed to turn over said real and personal property to the Trustee in Bankruptcy. It is further

ORDERED, ADJUDGED AND DECREED that the Defendants shall render to the Trustee an accounting of all monies and other properties received as rent from the Debtor and as a result of the aforementioned sale of real property and shall render such accounting within 30 days of the date of entry of this Order.