560 So.2d 1276 (1990)
Opal G. HURLBERT, Appellant,
v.
John N. SHACKLETON, Jr., M.D. and Elayne M. Shackleton, a/k/a Elayne Moss Shackleton, Appellees.
No. 89-2283.
District Court of Appeal of Florida, First District.
April 18, 1990.
Rehearing Denied June 1, 1990.
*1277 Dudley D. Allen, of Wilbur and Allen, Jacksonville, for appellant.
Martin Sack, Jr., Jacksonville, for appellees.
SHIVERS, Chief Judge.
This is an appeal from an order on supplementary proceedings denying relief to appellant, judgment creditor. We reverse and remand for further findings.
Dr. Shackleton used to practice obstetrics, gynecology and surgery but in September 1983 he received notice that his medical malpractice insurance was to be cancelled effective January 1984. As a result he began a part-time general medical practice confined primarily to doing physicals, x-rays and tests, eliminating riskier areas of practice.
About this time Dr. Shackleton began transferring assets that were in his name alone to himself and his wife, either as tenants by the entireties, or as joint tenants with right of survivorship (w.r.o.s.).
On September 27, 1983 he transferred ownership of his medical office property to *1278 him and his wife jointly, and C & S Development Company (C & S) issued a corporate stock certificate for 50 shares to him and his wife jointly. Prior to the latter transfer, C & S was a private corporation in which Harold H. Crum and Dr. Shackleton each had half-interest, owning 50 shares each, and the company's only asset was a trailer park. On October 4, 1983 Dr. Shackleton transferred 50 shares of Virginia Electric & Power stock to him and his wife as joint tenants w.r.o.s., and the next day he transferred 100 shares of Indiana Michigan and Electric Company stock to him and his wife as joint tenants w.r.o.s.
On February 20, 1984 Dr. Shackleton committed malpractice during the treatment of appellant.
On October 5, 1984, Dr. Shackleton and his wife, as joint tenants w.r.o.s., acquired City of Des Moines bonds worth $20,000. On April 26, 1985, Dr. Shackleton transferred ownership of $10,000 in Chemetron Corporation bonds to him and his wife, as joint tenants w.r.o.s., and on May 7, 1985, he made a similar transfer of $10,000 in Barnett Bank bonds, both of which he originally inherited from his father. On June 1, 1985 he and his wife acquired $80,000 in Jacksonville Health Facilities Authority bonds, again, as joint tenants w.r.o.s.
Appellant filed her malpractice complaint September 12, 1985.
C & S began dissolution, and on December 16, 1985, it issued three warranty deeds to Dr. Shackleton and his partner. None of these deeds mentioned Dr. Shackleton's wife.
Subsequently, on March 4, 1986, appellant obtained a final judgment against Dr. Shackleton, pursuant to a jury verdict, for the amount of $222,469.17. This judgment was recorded March 11, 1986.
On May 13, 1986 C & S issued a corrective warranty deed to Dr. Shackleton and his partner which, again, did not mention Mrs. Shackleton.
Subsequently, during a deposition, Dr. Shackleton was asked why he transferred his place of business to him and his wife jointly; he responded "[b]ecause I wasn't able to get malpractice insurance, and I wanted to cover all the bases."
On June 27, 1986 C & S issued another corrective warranty deed, reconveying all the property previously conveyed, to Dr. Shackleton and his wife.
On March 5, 1987 Dr. Shackleton and his wife sold the medical office property and received a mortgage note in the amount of $115,000.
On June 2, 1988 appellant initiated supplementary proceedings against Dr. Shackleton and his wife, but on September 21, 1988 Dr. Shackleton died and his wife was subsequently joined as the personal representative of his estate. Addressing the various property interests upon which appellant sought execution, the trial court denied any relief, and this appeal followed.
Under section 56.29(5), Fla. Stat. (1985), a "judge may order any property of the judgment debtor, not exempt from execution, in the hands of any person or due to the judgment debtor to be applied toward the satisfaction of the judgment debt." (emphasis added). A joint tenant whose interest is w.r.o.s. has an interest that is subject to execution on a judgment lien. E.g., McDowell v. Trailer Ranch, Inc., 421 So.2d 751 (Fla. 4th DCA 1982). A joint tenant whose interest is by the entireties, however, does not have an interest that is subject to execution on a judgment lien. E.g., Neu v. Andrews, 528 So.2d 1278 (Fla. 4th DCA 1988). There is nothing indicating that section 56.29(5) expands on these two basic legal principles and by its own terms the statute does not permit its application to exempt property.
The trial court found that Dr. Shackleton's interest in C & S was one held with his wife as tenants by the entireties. Because the C & S certificate issuing 50 shares to them both does not itself designate the form of interest taken, the court could find that the stock was held by the Shackletons as tenants by the entireties. *1279 See First National Bank of Leesburg v. Hector Supply Company, 254 So.2d 777 (Fla. 1971). Since the C & S stock at issue was held by entireties ownership, the C & S corporation was not free to ignore Mrs. Shackleton's interest in distributing its assets pursuant to a dissolution under the Florida General Corporation Act, Chapter 607. Thus, C & S's primary asset, the trailer park property, could not have legitimately been distributed solely to Dr. Shackleton and his partner, Mr. Crum. As a result, the corrective deeds issued after appellant perfected her judgment against Dr. Shackleton merely evidenced proper documentation of true title and related back to the date of the original deed. 23 Am.Jur.2d, deeds, section 287 and 288. This being the case, the property was not "available to answer for the judgment debts of one of the tenants individually." Neu v. Andrews, 528 So.2d at 1279.
As to the corporate stocks and bonds at issue in this case, in First National Bank of Leesburg, supra, the supreme court held that as long as a bank account contract or signature card is drafted consistent with the form of estates by the entireties, they will be upheld as such. The court added, ["h]owever, since the form will be similar to that of a joint tenancy, and since the spouses may or may not intend that a tenancy by the entireties should result, the intention of the parties must be proven unless the instrument creating the tenancy clearly bears an express designation that the tenancy is one held by the entireties." Id. at 781 (emphasis in original; footnote omitted). In other words, unless a tenancy by the entireties is clearly expressed in the instrument, the parties must prove they intended to create a tenancy by the entireties.
In the instant case, all six of the corporate stocks and bonds provided the Shackletons a menu option of owning them as tenants by the entireties, tenants in common, or joint tenants w.r.o.s. On each of the bonds they elected to own them as joint tenants w.r.o.s. Having clearly chosen one form of interest over the other, there was no need for parol evidence on intent. Intent was self evident.
Nevertheless, this fact is no benefit to appellant. The trial court correctly held that appellant could not reach Dr. Shackleton's survivorship property now that he is deceased, citing D.A.D., Inc. v. Moring, 218 So.2d 451 (Fla. 4th DCA 1969). There the court held that "a mortgage on interest of a joint tenant imposes a lien upon a defeasible interest, and the lien, of necessity, terminates when, by reason of the mortgagor's death, his interest in the tenancy terminates." Id. at 452. Although appellant could have executed upon Dr. Shackleton's interest in the stocks and bonds prior to the doctor's death, e.g., McDowell, supra, now that Dr. Shackleton has died, the interest in those securities has vested entirely in Mrs. Shackleton and the judgment lien against Dr. Shackleton's prior undivided one half interest in them is no longer viable.
In its order, the trial court drew a distinction between "probable" and "possible" future creditors. Classifying appellant as a "possible" future creditor, the court said it found no cases holding a transfer of assets to be fraudulent as to "possible" future creditors.
Under section 726.01, Fla. Stat. (1985), a creditor has a cause of action to set aside a debtor's conveyance that took place before the creation of the debt, but only if the debtor intended to defraud the subsequent creditor. Bank of Montreal v. Malinski, 498 So.2d 440 (Fla. 3d DCA 1986). "However, where the creditor is not in existence at the time of the conveyance, there must be evidence establishing actual fraudulent intent by one who seeks to have the transaction set aside." Eurovest, LTD. v. Segall, 528 So.2d 482, 483-84 (Fla. 3d DCA 1988).
Though there is evidence in the record of Dr. Shackleton's intent with regard to the subject transfers, the trial *1280 court did not specifically rule on whether he intended to defraud appellant or anyone else in making the transfers. Its focus was instead on the nature of the subsequent creditor, i.e., it focused on whether the subsequent creditor was "possible" or "probable". Appellant's argument is well taken that this is not the relevant inquiry and, as the trial court acknowledged, there is no case law pertaining to such a distinction between creditors.
We reverse and remand for a finding on whether Dr. Shackleton had the requisite actual fraudulent intent at the time he transferred the affected assets. Because appellant was not an existing judgment creditor when Dr. Shackleton transferred the affected assets to a form of ownership by him and his wife, together, it is incumbent upon her to show that Dr. Shackleton harbored actual fraudulent intent at the time any of the asset transfers were made. Bay View Estates Corporation v. Southerland, 114 Fla. 635, 154 So. 894 (1934); Eurovest, LTD., supra. Since the affected assets were all originally owned solely by Dr. Shackleton, if any asset is found to be fraudulently transferred, it is subject to satisfying the judgment debt. Section 726.01, Fla. Stat. (1985).
REVERSED and REMANDED for further findings consistent with this opinion.
WIGGINTON, J., concurs.
BARFIELD, J., dissents, with opinion.
BARFIELD, Judge, dissenting.
I cannot conceive of any result being reached by the trial judge that would afford this judgment creditor any relief upon remand. The trial judge is unequivocal in his conclusion that this creditor was not contemplated by the law against fraudulent transfers. How could the trial judge now conclude that Dr. Shackleton had the actual intent to defraud this unknown, unintended victim of a future negligent act, or anyone else similarly situated?
It is my opinion that the trial judge was correct as a matter of law in denying relief to the judgment creditor. The statutory law in Florida both before and after the Uniform Fraudulent Transfer Act is a codification of English common law and statutory law as so clearly expressed in Bay View Estates Corporation v. Southerland, 114 Fla. 635, 154 So. 894 (1934). Therein the court said:
The only restriction imposed by law is that no transfer shall be made which will interfere with the existing rights of other persons.
* * * * * *
A transfer of property by a debtor is not fraudulent either under the English statutory or the common law unless the act is directed against creditors who have just, lawful, and existing claims. Even if the debtor intends to deceive the public, if his act in transferring his property does not hinder or delay his creditors, no legal fraud exists.
* * * * * *
To constitute a fraudulent conveyance, there must be a creditor to be defrauded, a debtor intending fraud, and a conveyance of property which is applicable by law to the payment of the debt due.
Id. at 900.
In each case discussed by the parties and the majority opinion, the future creditors were identifiable individually or as a class at the time of transfer, and each case dealt with financial and business transactions where financial credibility was a principal ingredient in the parties' dealings. In the instant case, future victims of Dr. Shackleton's medical malpractice were not identifiable individually or as a class, since the record contains no evidence that Dr. Shackleton intended to commit malpractice or suspected that he would be guilty of malpractice. I question whether any person engages the services of a medical doctor on the strength of his financial credibility rather than his medical credibility.
The record in this case indicates that the medical malpractice insurance crises struck *1281 Dr. Shackleton, and as a prudent move he sought to protect his assets from future unforeseen adversity wrought by a medical mistake. That is not legal fraud.
I would have affirmed the judgment without comment.