**ADVEST, INC., Plaintiff,**

v.

**Alan S. RADER, et al., Defendants.**

**No. 88–2265 Civ.**

United States District Court,
S.D. Florida,
Miami Division.

July 25, 1990.

Robert M. Brochin, Miami, Fla., for plaintiff.

Neil J. Berman, Russell K. Rosenthal, Miami, Fla., Mark Perlman, Fort Lauderdale, Fla., Milton E. Grusmark, for defendants.

## ORDER GRANTING MOTION OF GLICK CLAIMANTS FOR SUMMARY JUDGMENT

HOEVELER, District Judge.

THIS CAUSE IS before the court upon the motion of Defendants Robert H. Glick, Stephen Glick, Marla Glick, Dana Rader and Lance Rader ("the Glick Claimants") for summary judgment in their favor against co-defendants Alan Rader and Louise Rader (collectively, "the Raders") in an amount sufficient to satisfy their claim (plus costs, interest and attorneys' fees). By their motion, the Glick Claimants further seek dismissal of the Raders' cross-claim against them, with prejudice.

## Facts

The facts established by the record in this action, even when viewed in a light most favorable to Alan and Louise Rader, depict a drama replete with the classic elements of tragedy: wealth, greed and betrayal. A family split into factions over the dispensation of a grandfather's bequest; a father who disregarded a fiduciary duty to his children, nieces and nephews by invading assets held for them in trust; the resentment, bitterness and estrangement that developed as a consequence of these actions; and finally, for the piece de resistance, one man's ultimately unsuccessful plan to utilize a new spouse for the purpose of defeating an attempt by the defrauded relatives to recover their squandered assets.

Alan Rader is the son of Charles Radetsky, who died in 1978. Charles Radetsky's will, which established a testamentary trust, was probated in the New York State Surrogate's Court. The trust named Esther (Decedent's widow) as the life beneficiary and the Glick Claimants as the residuary beneficiaries. Alan Rader and his late mother, Esther Radetsky, served as co-trustees of Radetsky's trust until Esther's death in 1985. As residuary beneficiaries, the Glick claimants (all of whom are decedent's grandchildren) were to be paid the principal of the trust upon Esther's death.

As the sole surviving trustee, Alan Rader was legally obligated to file a trust accounting with the Surrogate's Court. He failed to render an accounting until a contempt order was entered against him by the Surrogate. When the accounting was examined, the Glick Claimants filed objections to the accounting, on the ground that it reflected improper and unjustified disbursements by Alan Rader to himself.[1] These objections prompted the Glick Claimants to file a motion for partial summary judgment against Alan Rader in the proceeding before the Surrogate, in September 1987.

At the time of the motion, Alan Rader was unmarried, as he had been for the eight years he served as co-trustee, and maintained assets in accounts held by Advest, Inc., a Connecticut brokerage company with offices in New York and Florida. At the time, these accounts were sufficient to satisfy in full the Glick Claimants' claims against him.

During the pendency of the motion for summary judgment, Alan Rader (aged 55) married co-defendant Louise I. McCarthy (aged 28), and immediately instructed Advest to transfer the assets contained in his individual accounts into accounts jointly owned by himself, and his new bride.[2]

After both sides submitted affidavits, exhibits and briefs on the matter, the Surrogate found that Alan Rader had violated his fiduciary duties and committed grave misconduct.[3] On October 15, 1988 the New York Surrogate's Court entered a judg-

---

1. See, Exhibit "1" to Glick Claimants' motion for summary judgment.

2. On Wednesday, December 2, 1987 Alan and Louis were married in Broward County, Florida. The affidavit of Advest's General Counsel reflects that on December 2, 1987, Alan Rader requested that Advest open a new account in the names of "Alan S. Rader and Louise I. Rader, joint tenant with right of survivorship." This account was opened on December 15, 1987 and at that time, the assets of Alan Rader's preexisting Advest account (bearing the title, "Alan S. Rader") were transferred into the joint account. In addition, a second joint account was later opened in the name of Alan S. Rader and Louise I. Rader. The account balances as of December 31, 1988 (shortly after the filing of the interpleader action) were $1,208,707.75, and $49,970.00, respectively. As of January 31, 1990 the accounts reflected balances of $1,495,333,12,

and $49,6565.95 [sic], respectively. See, Affidavit of Lois Cohen, Exhibit "6" to the summary judgment motion.

3. In his order, the Surrogate made several references to Alan Rader's wanton disregard for his fiduciary obligations as trustee:

"It appears that the trustee thought he had *carte blanche* authority in his administration of the trust, and was not responsible to anyone."

See, Surrogate's Order, Exhibit "1" to the Motion for Summary Judgment, at p. 4.

"The affidavit of the trustee submitted in opposition to [the summary judgment] motion is a rambling recitation of his activities in administering the trust assets as he saw fit and apparently paying trust assets to himself without benefit of court approval."

*Id.* at p. 5.

ment in favor of the Glick claimants and against Alan Rader in the amount of $932,178.03.[4] In November, 1988 the Glick Claimants proceeded to enforce the judgment by serving first a restraining notice and then an execution on Advest. At the time Advest was served with post judgment process in November, 1988, there were sufficient assets in the accounts at Advest to satisfy the Glick Claimants' judgment, as well as Maxine Rader's judgment.[5]

After being served with post judgment process by both the Glick Claimants and Maxine Rader, Advest initiated the instant interpleader action on December 2, 1988, for the conventional purpose of facilitating judicial resolution of the conflicting claims (asserted by Alan and Louise Rader, the Glick Claimants, and Maxine Rader) to the accounts ("interpleaded funds").

All adverse claimants have answered the amended complaint, asserting various claims to the interpleaded funds. The Raders additionally asserted three counterclaims to the Glick Claimants' crossclaims alleging abuse of process, tortious interference and civil theft. The Glick Claimants have moved the court to enter summary judgment in their favor. The undersigned heard the argument of counsel on Wednesday, May 30, 1990 at 8:30 am.[6]

## Jurisdiction

Pursuant to this court's order of May 30, 1990[7], Advest was discharged as a party to this suit. Advest is subject to the jurisdiction of this court only in its limited capacity as custodian of the interpleaded funds. However, the court exercises jurisdiction over the crossclaims by virtue of the diversity of citizenship of the adverse claimants, pursuant to 28 U.S.C. § 1335(a)(1).[8]

## Summary

■ As a general rule, the transfer of assets from accounts owned by X individually, into accounts jointly owned by X and Y, has the effect of placing the assets beyond the reach of X's creditors, unless the transfer is clothed in fraud. The Glick Claimants contend that Alan Rader fraudulently transferred assets to the joint account, with the intent and effect of hindering, delaying and defrauding his creditors. Florida Statute 726.01 (repealed in 1988, and replaced by Florida Statute 726.106 "Uniform Fraudulent Transfer Act" (1988)), codifies the Florida law governing fraudulent conveyances. Under both the predecessor statute and the Uniform Fraudulent Transfer Act, Alan Rader's retitling of his Advest accounts constitutes a fraudulent transfer which must be set aside. Thus, summary judgment in favor of the Glick claimants on their claim to the interpleaded funds is properly granted.

## Discussion

### A. The Florida Fraudulent Conveyance Statute

The challenged transfer of assets took place in December 1987. Technically, propriety of the transfer is governed by the earlier statute, Fla.Stat. § 726.01. This statute was repealed effective January 1, 1988. However, the same result is reached under the successor statute, Fla.Stat. § 726.101 *et seq.*, the Uniform Fraudulent

---

4. This judgment was held to be final, and domesticated by a Florida state court (Eleventh Judicial Circuit) on December 15, 1989. See, Exhibit "4" to the Glick Claimants' motion for summary judgment.

At about the same time, Alan Rader's ex-wife, Maxine Rader, obtained a judgment in the amount of $41,308.17 against Alan Rader in Broward County, FL. She later garnished Advest to satisfy the judgment.

5. Maxine Rader won a judgment totaling $41,308.17 in state court (Broward County, FL) on June 6, 1988. See, Exhibit "A" to the Answer of Maxine Rader to the interpleader action (docket entry # 47).

6. The day before the hearing, Defendant Alan Rader filed an affidavit in opposition to the summary judgment motion. Rule 56(c), Fed.R. Civ.P. permits an adverse party to file opposing affidavits prior to the date of a summary judgment hearing, therefore the affidavit was timely filed.

7. Docket entry # 79.

8. Robert and Steven Glick are citizens of New Jersey. Marla Glick and Dana Rader are citizens of New York. Lance Rader, Alan Rader and Louise Rader are citizens of Florida.

Transfer Act, as the Florida legislature substantially incorporated the legal and equitable principles of the predecessor act into the present act.[9]

The Glick Claimants have fully substantiated the voidability of Alan Rader's transfer of assets under § 726.01, which provides that a conveyance in fraud of creditors is void as to creditors.[10] For the purposes of § 726.01, the Florida courts have long-defined a creditor as one who has asserted a legal claim or demand of a contractual nature when the alleged fraudulent conveyance is made. *Whetstone v. Coslick*, 117 Fla. 203, 157 So. 666 (1934).

■ A creditor may prove a conveyance in fraud by establishing a *prima facie* case that is unrebutted, or by demonstrating actual fraudulent intent. In establishing a *prima facie* case of fraud, the presence of the following factors—termed "badges of fraud"—give rise to an inference of fraudulent intent which the transferor must rebut: absence of proportionate consideration, family relationship between the transferor and transferee, retention of possession of the property by the transferor. *United States v. Ressler*, 433 F.Supp. 459, 464 (S.D.Fla.1977); *United States v. Horton*, 760 F.2d 1225 (11th Cir.1985).[11]

These conditions have all been proven by the Glick Claimants to be present in the case at bar. Viewing the facts of this case, it becomes apparent that the transfer of assets effected by Alan Rader in December of 1987 demonstrates clear indicia of a *prima facie* case of fraudulent conveyance under section 726.01. Alan Rader was indebted to creditors whose claims were articulated in their state court challenge to the trust accounting, and again, in their motion for partial summary judgment. These claims were asserted prior to the retitling of the accounts, and Rader had to be well aware of the probability of an adverse ruling on the motion.[12] Furthermore, Alan Rader is related to the transferee by marriage. Alan Rader also retained possession of the accounts as joint owner, and has made withdrawals from the retitled accounts.[13]

Now the burden shifts to the transferor to prove that the conveyance was not fraudulent. *Id.* Alan and Louise Rader fail to meet their burden to rebut the claimants' *prima facie* case. They do not contend that anything of objective value was given to Alan Rader in consideration for transferring the subject assets into a jointly owned account[14], nor do they rebut any

9. § 726.111 "Supplementary Provisions" of the Uniform Fraudulent Transfer Act states that unless displaced by the express provisions of the new act, the principles and law and equity under the earlier statute remain intact, and supplement the provisions of the new act.

10. Section 726.01 read, in pertinent part, as follows:

Every feoffment, gift, grant, alienation, bargain, sale conveyance ... made or executed, contrived or devised of fraud, ... to the end, purpose or intent to delay, hinder or defraud creditors or others of their just and lawful actions, suits, debts, accounts, ... shall be ... deemed, held, adjudged and taken to be utterly void, frustrate and of none effect ...

11. See also *In re Blitstein*, 105 B.R. 133 (Bankr. S.D.Fla.1989); *In re Flanzbaum*, 10 B.R. 420 (Bankr.S.D.Fla.1981).

12. The decision of the Surrogate was not a close one. Alan Rader's sworn statement that the Surrogate's ruling came as a complete surprise, Affidavit of Alan Rader in Opposition to Glick Claimants' motion for Summary Judgment at

para. 8, is unpersuasive. The ruling was based upon Rader's failure to offer any reasonable explanation for his invasions of the trust, and states in pertinent part:

The affidavit of the trustee submitted in opposition to this motion is a rambling recitation of his activities in administering the trust assets as he saw fit and apparently paying trust assets to himself without benefit of court approval.

Surrogate's Order, Exhibit "1" to Glick Claimant's Motion for Summary Judgment.

13. Affidavit of Louise Rader in opposition to Glick Claimants motion for summary judgment, p. 2.

14. Alan and Louise Rader's affidavits reflect that Louise's love and affection were the principal commodities tendered in exchange for the transfer of assets. Additionally, Louise alludes vaguely to assisting Alan with his investments before and after their marriage, but fails to specify the length of said assistance, terms of compensation, etc.

of the other elements which establish the *prima facie* case.[15]

Summary judgment in fraud cases is reserved for extraordinary circumstances, *Automobile Sales Inc. v. Federated Mutual Implements and Hardware Insurance Company*, 256 So.2d 386 (Fla. 3rd DCA 1972). The Raders' failure to present the court with any question of law or fact as to their intent to defraud the Glick Claimants militates in favor of such a remedy. Thus, summary judgment is appropriately entered in favor of the Glick Claimants on their claims to the interpleaded funds.

### B. The Uniform Fraudulent Transfer Act

The court reaches the same result under the act which replaced section 726.01 in 1988, the Uniform Fraudulent Transfer Act, Fla.Stat. § 726.101, *et seq.* The Uniform Fraudulent Transfer Act codifies much of the pre-existing law under the earlier statute.[16] Section 726.106 of the new act disregards intent, and provides that a conveyance is *per se* fraudulent where the creditor's claim arose prior to the transfer, the transfer lacks valid consideration, and the debtor was insolvent prior to the transfer.[17] The added requirement of insolvency under the new act is satisfied on the facts of this case. By his own admission, Alan Rader had no personal assets sufficient to satisfy the judgment, since all previously leviable assets had been retitled to reflect joint ownership by Alan and Louise Rader.[18] He also acknowledges that he has not paid any of the judgment. Because, as noted above, there was no rea-sonably equivalent consideration for the transfer, the transfer is fraudulent under § 726.106(1), and must be voided to the extent necessary to satisfy the Glick Claimants' claim. Fla.Stat. § 726.108(1)(a).

### C. Alan and Louise Rader's Counterclaim to the Crossclaims of the Glick Claimants

In their answer to plaintiff's amended complaint, Alan and Louise Rader assert counterclaims of abuse of process, tortious interference with a business relationship, and civil theft, claiming damages in an amount in excess of four million dollars. These counterclaims are premised upon the alleged wrongful acts of the Glick Claimants in attempting to improperly garnish funds which were purportedly owned jointly by Alan and Louise Rader (*i.e.* the interpleaded funds). Whereas this court has determined that the Surrogate's Order of October, 1988 was a final judgment, domesticated in the State of Florida, these counterclaims have no merit, and must be dismissed with prejudice.

For the reasons stated above, it is hereby,

ORDERED and ADJUDGED as follows:

(1) Summary Judgment is GRANTED, in favor of the Glick Claimants, on their claim to the interpleaded funds in an amount sufficient to satisfy their claim;

(2) the Glick Claimants' *ore tenus* motion to strike the Rader Claimants' affidavit in opposition to the motion for summary judgment is DENIED;

---

15. The Rader Claimants failed to submit to the court a memorandum in opposition to the the the motion for summary judgment. However, Louise and Alan Rader each filed an affidavit in opposition to the motion on the day before the hearing. During the course of the hearing, The Glick Claimants through counsel moved to strike these affidavits as untimely filed. Rule 56(c), Fed.R.Civ.P. permits an adverse party to serve opposing affidavits at any time prior to the hearing date. Accordingly, the Raders' affidavits were properly filed, and the motion is appropriately denied.

16. See fn. 9, *supra.*

17. § 726.106 provides, in relevant part, as follows:

(1) A transfer made ... by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made ... if the debtor made the transfer ... without receiving a reasonable equivalent value in exchange for the transfer ... and the debtor was insolvent at that time.

18. See, Deposition of Alan Rader at p. 5, Exhibit "10" to Glick Claimants' motion for summary judgment.

**856**

(3) the crossclaim of Alan and Louise Rader against the Glick Claimants is DISMISSED with prejudice.

DONE and ORDERED.