MARGIE REED HARPER, AS ALLEGED TRANSFEREE OF THE ASSETS OF RODNEY W. REED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harper v. Commissioner
Docket No. 14119-90
United States Tax Court
T.C. Memo 1993-126; 1993 Tax Ct. Memo LEXIS 121; 65 T.C.M. (CCH) 2216; March 30, 1993, Filed *121 For petitioner: V. Jean Owens and Sidney A. Soltz. For respondent: Steve R. Johnson. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined transferee liability under section 6901 (as a result of transfers of assets on September 27, 1981) against Margie Reed Harper (petitioner) in the amount of $ 658,360, plus interest, for unpaid 1978, 1979, 1980, and 1981 Federal income taxes, and additions to tax, due from petitioner's former husband, Rodney W. Reed (Mr. Reed). All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioner is liable as a transferee for the unpaid Federal tax liabilities of Mr. Reed; and (2) if so, the amount of her liability, including the amount of interest thereon. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in Groveland, Florida, at the time the petition in this case was filed. Petitioner and Mr. Reed were married on May 20, 1974; they were divorced on July 2, 1981. They were residents of Florida throughout *122 their marriage. Petitioner filed individual Federal income tax returns for 1978, 1979, 1980, and 1981. Despite the fact that Mr. Reed had substantial taxable income for 1978, 1979, 1980, and 1981, he did not file Federal income tax returns for these years. The likely source of Mr. Reed's unreported income was illegal drug trafficking. In March or April 1981, respondent's Examination Division commenced an audit of Mr. Reed with respect to 1978, 1979, and 1980. Mr. Reed's representative was E.M. Brantley; by May 27, 1981, Mr. Brantley had been informed that Mr. Reed would owe a substantial amount of taxes for 1978, 1979, and 1980. By September 1981, Mr. Brantley and respondent's agent had discussions with respect to Mr. Reed's 1978, 1979, and 1980 tax liability on at least six different occasions. A hearing incident to petitioner's and Mr. Reed's divorce was held on July 2, 1981, in Kissimmee, Florida. Petitioner and her counsel were present at the divorce hearing. Mr. Reed was not; however, he filed an answer and waiver. Although neither petitioner nor Mr. Reed requested a division of property at the hearing or in papers incident to the divorce, at the trial in this case *123 petitioner testified that she and Mr. Reed had discussed a property division prior to the divorce hearing but had not reached agreement as of the date of the hearing. Neither petitioner nor her attorney informed the presiding judge that a property settlement agreement was pending or that the parties had even discussed a division of property. After warning petitioner that she could not seek financial relief of any kind from Mr. Reed after the dissolution of the marriage, the judge declared petitioner's marriage to Mr. Reed irretrievably broken, and the marriage was thereafter dissolved. On September 27, 1981, Mr. Reed transferred to petitioner various assets in which he had an ownership interest. Said transfers were made without monetary consideration. During an interview at petitioner's home with Revenue Agent Mack Palmer and Special Agent Paul Hawkins on July 8, 1982, petitioner described the events leading up to the September 27, 1981, transfer of assets. Agent Palmer characterized petitioner's description of the transfer of assets as follows: She said that Mr. Reed had been drinking a lot, and that one night, he just called her and told her that he couldn't deal with *124 the property anymore, and she could have it.
Indentures transferring Mr. Reed's interest in real property were prepared by petitioner's daughter in August 1981. The indentures contain the phrase: "THIS CONVEYANCE IS PURSUANT TO PROPERTY SETTLEMENT AGREEMENT AND DISSOLUTION OF MARRIAGE". The market values (net of liabilities) of Mr. Reed's interests in the transferred assets on the date of transfer totaled $ 339,193, computed as follows: Land bank stock
$   4,375
Tangerine grove house
6,000
Motor coach
13,000
Carport I (used car business)
66,113
MRS Ranch
Buildings
$ 48,640
Cattle
12,726
Equipment
42,250
64 acres
[1] 29,725
303 acres
116,364
$ 249,705
$ 339,193
*125 Immediately following the transfer, Mr. Reed's assets totaled approximately $ 404,000 and his liabilities, including tax liabilities and interest for 1978, 1979, and 1980 totaled approximately $ 586,000. As a result, immediately after transferring assets to petitioner, Mr. Reed's liabilities exceeded his assets by approximately $ 182,000. In 1985, Mr. Reed was indicted and tried for criminal tax violations for 1979, 1980, and 1981. He was convicted of willful failure to file an income tax return, section 7203, for 1980 and convicted of tax evasion, section 7201, for 1981. As a result of these convictions, Mr. Reed was incarcerated for approximately 18 months. In a notice of deficiency, dated March 15, 1990, respondent determined deficiencies in Mr. Reed's income tax, and additions to tax for 1978, 1979, 1980, and 1981 as follows: Year
Deficiency
Sec. 6653(b)
1978
$ 4,319
$ 2,160
1979
162,565
81,283
1980
153,663
76,832
1981
183,386
91,693
Mr. Reed did not challenge respondent's determinations; accordingly, the aforementioned tax deficiencies and additions to tax were assessed. Petitioner concedes that respondent's determinations with respect to Mr. Reed *126 are generally correct. To date, Mr. Reed has not paid the assessed tax liability. On April 17, 1990, respondent made a jeopardy assessment against petitioner as transferee of assets from Mr. Reed. On June 14, 1990, respondent issued a statutory notice of transferee liability to petitioner. Prior to the issuance of the statutory notice, respondent made several unsuccessful attempts to collect the Federal tax liabilities due from Mr. Reed. As of the date of the notice of transferee liability, Mr. Reed had insufficient assets to pay his tax liabilities, additions to tax, and interest for tax years 1978, 1979, 1980, and 1981. OPINION I. Liability for Unpaid Taxes
Pursuant to section 6901(a)(1)(A), respondent may collect from a transferee of assets the unpaid income tax liability of the transferor. Phillips v. Commissioner, 283 U.S. 589, 592, 593 n. 3 (1931) (discussing Revenue Act of 1926, ch. 27, sec. 280, 44 Stat. 9, 61, which was the predecessor to sec. 6901); Gumm v. Commissioner, 93 T.C. 475, 479 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991). Section 6901 *127 provides, in part: (a) METHOD OF COLLECTION. -- The amounts of the following liabilities shall * * * be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) INCOME, ESTATE, AND GIFT TAXES. -- (A) TRANSFEREES. -- The liability, at law or in equity, of a transferee of property - (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes), * * * (b) LIABILITY. -- Any liability referred to in subsection (a) may be either as to the amount of tax shown on a return or as to any deficiency or underpayment of tax.
Section 6901(h) provides that a transferee may be a donee, heir, legatee, devisee, or distributee. Courts have defined a transferee as a person who takes or receives property of another "without full, fair and adequate consideration to the prejudice of creditors". United States v. Floersch, 276 F.2d 714, 717 (10th Cir. 1960). Respondent has the burden of proving all of the elements necessary to establish petitioner's liability as a transferee. Sec. 6902(a); Rule 142(d). *128 If respondent carries this burden of proof, the transferee (here, petitioner) is liable for the transferor's (here, Mr. Reed's) taxes due for the year of the transfer and for prior years, as well as any additions to tax, to the extent the amount of such does not exceed the value of the assets transferred. Estate of Glass v. Commissioner, 55 T.C. 543, 575 (1970), affd. 453 F.2d 1375 (5th Cir. 1972). Here, since the value of the assets transferred to petitioner from Mr. Reed ($ 339,193) is less than the amount of taxes, additions to tax, and interest due from him for taxable years 1978, 1979 and 1980 (in excess of $ 480,000), petitioner's maximum transferee liability is $ 339,193, plus interest. [2]
*129 The determination as to the transferee's liability for the transferor's obligation, and the extent of that liability, depends upon State law. Commissioner v. Stern, 357 U.S. 39, 45 (1958); Adams v. Commissioner, 70 T.C. 373, 389 (1978). All transfers in this case occurred in Florida; hence Florida law governs. Id. at 390. In Florida, every gift or transfer of goods made with the purpose or intent to delay, hinder, or defraud creditors is void and of no effect. Schad v. Commissioner, 87 T.C. 609, 614 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987) (citing Fla. Stat. Ann. sec. 726.01). Fla. Stat. Ann. sec. 726.01 (West 1969) (repealed in 1988, and replaced by Fla. Stat. Ann. sec. 726.106 "Uniform Fraudulent Transfer Act" (West 1988)), codifies Florida law governing fraudulent conveyances for the years in issue. The statute provides: Every feoffment, gift, grant, alienation, bargain, sale, conveyance, transfer and assignment of lands, tenements, hereditaments, and of goods and chattels, or any of them, *130 * * * made or executed, contrived or devised of fraud, covin, collusion or guile, to the end, purpose or intent to delay, hinder or defraud creditors or others of their just and lawful actions, suits, debts, accounts, * * * shall be * * * deemed, held, adjudged and taken to be utterly void, frustrate and of none effect * * *
Fla. Stat. Ann. sec. 726.01 (West 1991). In order to establish that the transfers in this case were void and of no effect under Fla. Stat. Ann. sec. 726.01 (West 1969), respondent must establish that there was: (A) A creditor to be defrauded; (B) a debtor intending fraud; and (C) a conveyance of property which is applicable by law to the payment of the debt due. Sponholtz v. Sponholtz, 190 So. 2d 572, 573 (Fla. 1966); Bay View Estates Corp. v. Southerland, 154 So. 894, 900 (Fla. 1934) (overruled on another issue by B.A. Lott, Inc. v. Padgett, 14 So. 2d 667 (Fla. 1943)); Johnson v. Dowell, 592 So. 2d 1194, 1196 (Fla. Dist. Ct. App. 1992); Wieczoreck v. H & H Builders, Inc., 450 So. 2d 867, 873 (Fla. Dist. Ct. App. 1984) *131 (overruled on another issue by Exceletech, Inc. v. Williams, 579 So. 2d 850 (Fla. Dist. Ct. App. 1991)). A. A Creditor to be Defrauded
The facts in this case clearly establish that respondent was a creditor of Mr. Reed (the transferor) at the time he transferred assets to petitioner. B. A Debtor Intending Fraud
Under the Florida fraudulent conveyance law, a determination of fraud rests upon the debtor's intent at the time of the transfer. Bay View Estates Corp. v. Southerland, 154 So. at 900; Wieczoreck v. H & H Builders, Inc., 450 So. 2d at 873. The debtor's fraudulent intent at the time of transfer can be established by either of the following: (1) A showing of actual fraudulent intent, or (2) an unrebutted showing of constructive fraudulent intent (also called a "prima facie" case of fraud) through the existence of "badges of fraud" -- factors which give rise to a fraudulent intent. Advest, Inc. v. Rader, 743 F. Supp. 851, 854 (S.D. Fla. 1990); Wieczoreck v. H & H Builders, Inc., 450 So. 2d at 873. In the instant *132 case, respondent established that Mr. Reed had a constructive fraudulent intent at the time he transferred assets to petitioner on September 27, 1981. Under Florida law, the party alleging a fraudulent conveyance must prove the allegation by the preponderance of evidence. Wieczoreck, 450 So. 2d at 872; Wieczoreck v. H & H Builders, Inc., 475 So. 2d 227, 228 (Fla. 1985). Florida Courts have recognized the following "badges of fraud": (1) A family relationship between the transferor and transferee; (2) the insolvency or indebtedness of the transferor; (3) lack of consideration or grossly inadequate consideration; (4) retention of possession of the property by the transferor; (5) the pendency or threat of litigation; (6) secrecy or concealment of the transfer; (7) the reservation of benefit to the transferee; and (8) the transfer of the debtor's entire estate. Advest, Inc. v. Rader, 743 F. Supp. at 854; United States v. Ressler, 433 F. Supp. 459, 464 (S.D. Fla. 1977), affd. 576 F.2d 650 (5th Cir. 1978); Cleveland Trust Co. v. Foster, 93 So. 2d 112, 114 (Fla. 1957); *133 Harkins v. Holt, 169 So. 481, 482 (Fla. 1936); Ostend Realty Co. v. Biscayne Realty & Insurance Co., 128 So. 643, 645 (Fla. 1930); Wieczoreck v. H & H Builders, Inc., 450 So. 2d at 873-874; Stephens v. Kies Oil Co., 386 So. 2d 1289, 1290 (Fla. Dist. Ct. App. 1980); Money v. Powell, 139 So. 2d 702, 704 (Fla. Dist. Ct. App. 1962); Banner Construction Corp. v. Arnold, 128 So. 2d 893, 896 (Fla. Dist. Ct. App. 1961); Tornwall v. Carter, 106 So. 2d 96, 99 (Fla. Dist. Ct. App. 1958). While a single badge of fraud standing alone may only indicate suspicious circumstances, the presence of several badges of fraud gives rise to a rebuttable inference of fraud. Advest, Inc. v. Rader, 743 F. Supp. at 854; Banner Construction Corp. v. Arnold, 128 So. 2d at 896. In the case at bar, respondent has established the existence of several badges of fraud, namely: (1) Mr. Reed and petitioner were married for over 6 years immediately *134 prior to the transfer; (2) Mr. Reed was substantially indebted to the Government and was insolvent at the time of transfer; [3] (3) the transfer from Mr. Reed to petitioner was not supported by monetary or nonmonetary consideration; and (4) Mr. Reed, or his representative, was aware that respondent was auditing him with regard to substantial unpaid Federal tax liabilities for tax years 1978, 1979, and 1980. These badges of fraud establish by the preponderance of evidence that Mr. Reed had the requisite fraudulent intent at the time of the challenged transfers. Where the party alleging fraud (here, respondent) has established fraudulent intent via the aforementioned badges of fraud, the party defending the transfer (here, petitioner) may rebut that showing. United States v. Horton, 760 F.2d 1225, 1228 (11th Cir. 1985); *135 Advest, Inc. v. Rader, 743 F. Supp. at 854-855. In the case at bar, we are unable to hold that petitioner satisfactorily rebutted respondent's prima facie showing that Mr. Reed transferred assets to petitioner with an intent to hinder, delay, or defraud his creditors. C. A Conveyance of Property Which is Applicable by Law to the Payment of the Debt Due
The facts clearly establish that but for the September 27, 1981, transfer of assets from Mr. Reed to petitioner, respondent could have proceeded against those assets to satisfy Mr. Reed's unpaid Federal tax liabilities. Under Florida law, divorce terminates the unities essential to the existence of a tenancy by the entireties and converts such tenancy to a tenancy in common. Fla. Stat. Ann. sec. 689.15 (West Supp. 1992). We therefore reject petitioner's assertion that respondent would not have been able to proceed against the transferred assets because petitioner and Mr. Reed owned them as tenants by the entireties at the time of the transfer. While petitioner and Mr. Reed at some point in time may have held portions of the MRS Ranch as tenants by the entireties, the indentures transferring *136 Mr. Reed's interests to petitioner indicate that on the transfer date (September 27, 1981), none of the transferred assets were so held. We also reject petitioner's assertion that the assets were transferred pursuant to a divorce settlement and therefore in return for adequate consideration. We recently decided a transferee liability case where the transfers were supported by adequate consideration. Tyrell v. Commissioner, T.C. Memo 1992-717. In that case, the husband-transferor transferred assets to his wife pursuant to a property settlement agreement which was incorporated into a decree of divorce. We therein held that, under Kansas law, the husband-transferor's obligation to support his wife constituted adequate consideration for the property settlement agreement. Id. at     (slip op. at 13). Unlike the situation in Tyrell, here the transfers were not pursuant to a property settlement agreement. Further, since Mr. Reed's obligation to support petitioner ceased upon divorce on July 2, 1981, [4] any previous obligation of support would not constitute adequate consideration for transfers made months later on September 27, 1981. *137 D. Conclusion
Respondent established that the transfer of assets to petitioner was made with the intent to hinder, delay, or defraud Mr. Reed's creditors, specifically respondent. We therefore find that the transfer of assets from Mr. Reed to petitioner was a fraudulent conveyance under Florida law, and thus hold that respondent established, as required by section 6902, petitioner's liability as a transferee under section 6901. II. Liability for Interest
In cases like the one at bar -- where the value of the assets transferred is less than the Federal tax liability of the transferor and the transferee liability arises under State law -- the interest liability of the transferee from the date of transfer to the date of the notice of transferee liability is determined by State law. Patterson v. Sims, 281 F.2d 577, 580-581 (5th Cir. 1960); Estate of Stein v. Commissioner, 37 T.C. 945, 961 (1962). Florida gives respondent the right to statutory interest on petitioner's transferee liability. LeBeau v. Commissioner, T.C. Memo. 1992-359. Petitioner's transferee liability is $ *138 339,193. Therefore, petitioner is liable not only for postjudgment interest under Federal law but also for prejudgment interest under Florida law on $ 339,193. Under Florida law, prejudgment interest is allowed in cases involving a liquidated claim. Town of Longboat Key v. Carl E. Widell & Son, 362 So. 2d 719, 723 (Fla. Dist. Ct. App. 1978). Respondent concedes that petitioner's liability became liquidated on April 17, 1990. Although Florida case law indicates that respondent's claim was liquidated prior to April 17, 1990, because of respondent's concession, we hold that the accrual of prejudgment interest at the rate of 12 percent, as prescribed under Fla. Stat. Ann. sec. 55.03 (West Supp. 1992), against petitioner, should run from April 17, 1990 to June 14, 1990, the date the notice of transferee liability was issued. As stated, petitioner is also liable for postjudgment interest (that is, interest accruing after the issuance of the notice of transferee liability to petitioner) in accordance with the provisions of the Internal Revenue Code. Estate of Stein v. Commissioner, supra; see Baptiste v. Commissioner *139 , 100 T.C.     (1993). The rates for such postjudgment interest are those rates provided under section 6621. The postjudgment interest runs from June 14, 1990, until the date petitioner pays the liabilities determined against her.
To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Petitioner contends that she paid (from borrowed funds) the entire $ 29,725 purchase price for the 64 acres (the Borrow Pits) and, accordingly, the value of assets transferred from Mr. Reed to her should be reduced by that amount. To corroborate her contention, petitioner introduced a loan work-sheet. However, there was no evidence to prove that the claimed loan was in fact finalized -- no loan agreement or promissory note was introduced. Petitioner also introduced a deed to the Borrow Pits listing Mr. Reed and her as owners, but there was nothing thereon to indicate which of them contributed to the purchase price. Furthermore, at Mr. Reed's criminal trial in 1985, petitioner testified: Q: And do you recall whether there was a second portion of the ranch that was purchased later, a quarry? A: A borrow pit right in the center of it. Q: And did you contribute to the purchase of that? A: No, I did not.↩
Accordingly, we do not find credible petitioner's contention that the purchase price of the Borrow Pits came from her.
2. We need not address petitioner's contention that she is not liable for Mr. Reed's 1981 Federal income tax liability. Without regard to Mr. Reed's 1981 Federal tax liability, petitioner's transferee liability would still be $ 339,193, the value of the assets transferred, because Mr. Reed's Federal income tax liabilities for 1978, 1979, and 1980 exceed $ 339,193.↩
3. Although petitioner asserted that respondent failed to consider certain property interests allegedly owned by Mr. Reed in determining his solvency, petitioner offered no credible testimony or documentary evidence to support such an assertion.↩
4. Under Florida law, a final judgment of divorce is res judicata as to all property rights of the parties which could have and should have been adjudicated in the divorce proceeding. Davis v. Dieujuste, 496 So. 2d 806, 809-810 (Fla. 1986). In Davis, Florida's highest court stated: where a trial court has acquired jurisdiction to adjudicate the respective rights and obligations of the parties, a final judgment of dissolution settles all such matters as between the spouses evolving during the marriage, whether or not these matters were introduced in the dissolution proceeding, and acts as a bar to any action thereafter to determine such rights and obligations.
Id.
Accordingly, in this case, Mr. Reed's obligation to support his wife ended when the judgment of divorce became final.↩